Nelson, Ch. JT.
The only questions presented to the court below, arise out of the motion for a nonsuit; and, as this was general, if the action can be sustained upon either of the checks or drafts in question, the judgment is erroneous.
The one for $1000 being payable at Vicksburgh in current bank notes was clearly not negotiable, and of course the suit, in respect to that, cannot be sustained in the name of the plaintiffs; (Leiber v. Goodrich, 5 Cowen, 186, 188; Thompson v. Sloan, 23 Wend. 73, 4, and the cases there cited;) but as the other was negotiable, there is no difficulty in upholding the action in the absence of any other objection.
Nearly a year elapsed between the making and delivery of this check, and the presentment of it to the bank for payment. It was payable presently, or on demand; and it .required but some three weeks at most to have transmitted it to the place .of payment.- Has reasonable diligence been shown, under these circumstances, on the part of the holders'? There can be no doubt, if there has not, and the drawer has sustained loss by reason of the loches, that he is discharged from liability. (Cruger v. Armstrong, 3 John. Cas. 5. Conroy v. Warren, id- 259. Murray v. Judah, 6 Cowen, 484, 490. Harker v. Anderson, 21 Wend. 372.) The only doubt on this subject has been whether, if it be clear that no loss has *428 resulted to the drawer, he can claim to be discharged on the ground of loches alone. Conflicting opinions have been expressed on the point in this court by different judges, and the question may still be considered an open one; though I rather think it has been assumed in this state, since the cases which I shall presently mention, and which were decided in 1802, that mere delay in the presentment would not have the effect to discharge the drawer, if he had not suffered actual loss as a consequence—this, however, to be shown in the first instance by the holder. The cases to which I refer, are Cruger v. Armstrong, (3 John. Cas. 5,) and Conroy v. Warren, (Id. 259.) The first involved the question, whether the. holder was bound to demand payment of the drawee, before he coaid resort to the drawer. The suit was brought some four years after the date of the check, and there was no proof of demand. It was held that a demand should have been shown, and that no liability accrued till after demand made. The enquiry, within what time demand should have been made, or what would have been the effect of presenting the check for payment after such a lapse of time as had there taken place, was noticed by Radcliff, J.; but he gave no opinion in relation to it. In Conroy v. Warren, the check bore date March 28th, 1800, and was not presented till the 20th of October following, when payment was refused for want of funds of the drawer. It appeared that the defendant, the drawer, after the date of the check, had drawn large sums of money out of the bank. Thompson, J. was of opinion, that it was incumbent on the plaintiff) under these circumstances, to show that the defendant had sustained no damage by the delay, and that the fact of his having drawn from the bank large sums of money after the date of the check, afforded an inference to that effect, sufficient to throw the burden of proving actual damages upon the defendant. Kent, J. observed: “In the case of Cruger. v. Armstrong, I considered it as a settled rule, that a check must be presented for payment in a reasonable time, otherwise the holder takes upon himself the risk of the banker’s responsibility; and *429 that drawing a check was an appropriation of as much money as it amounted to, in the hands of the bank. That in the present case, the bank did not fail, but it was the act of the defendant himself which defeated the payment of the check, by drawing out the money which, in good faith, was to be considered as appropriated for the payment of the check.”
The doctrine extracted from these cases by Sutherland, J. in Murray v. Judah, (6 Cowen, 490,) is, that “ as between the holder of a check, and an endorser, or third person, payment must be demanded within a reasonable time; but as between the holder, and the maker or drawer, a demand at any time before suit brought is sufficient, unless it appear that the drawee has failed, or the drawer has, in some other manner, sustained injury by1 the delay.” The same doctrine has been fully recognized as sound law in several subsequent cases; (Mohawk Bank v. Broderick, 10 Wend. 304; Gough v Staats, 13 id. 549; Merchants' Bank v. Spicer, 6 id. 445; Cromwell v. Lovett, 1 Hall, 68; Biting v. Brinkerhoff, 2 id. 463;) and is so laid down in our highest elementary authority. (3 Kent's Com. 88, 4th ed.; and see 4 id. 549, note, index.)
Such having been the understanding of oar courts, of the profession generally and of the commercial community, with regard to the doctrine applicable to this description of paper, and that too for the period of about forty years, I think we ought not now lightly to depart from it; especially, as there is reason to suppose that it has become incorporated into the business interests of the state, which might, and probably would be, seriously affected by any sudden change. Even if the analogies of the law derived from the established doctrine in respect to bills of exchange, have been slightly disregarded in the distinction made between the two classes of instruments, it is better to forego any temptation to remedy the discrepancy, than by so doing to disturb the settled channels of business, impair rights' that depend upon the supposed existence of the rule, and thus shake, to some extent, the confidence of the *430 commercial community. It is better that a rule of property entering into the every day business of life, be stable and uniform, than that it he the very best that could have been devised. The course of dealing readily accommodates itself to the law, and thus overcomes the effect of any trivial error or unsoundness of principle upon which the latter may be founded.
It was from this general view of the law, as well as from an impression at the time that the principle itself upon which the distinction taken in Murray v. Judah rested was not altogether indefensible, that I refused to concur .with my brother Cower, in that part of his opinion in Harker v. Anderson, (21 Wend. 372,) in which he disapproved of the distinction, and sought to place the two descriptions of paper, in every possible aspect, upon the same footing. I observe that no authority is there referred to directly controverting, or I may say, even necessarily negativing it. The argument rests, mainly, upon the position that checks, for all essential purposes, are bills of exchange, and therefore to be dealt with according to the same genera] rules of law. Now there are certainly so many points of resemblance between them, and so many steps necessary to be taken by the holder of a check, in common with the holder of a bill, in order to protect all his rights upon the paper, that this general reasoning against the particular exception stated in Murray v. Judah is, I admit, readily and strongly brought to bear upon the point in question. For instance, the same diligence is required by the holder in order to charge the endorser, and to escape any responsibility as to the continued solvency of the drawee. In either of these cases, it becomes the holder of a check to show the same promptness in - presentment, as in the case of a bill or promissory note; and it will be found, I think, in all the cases referred to from which the authority is derived for saying that the two classes of paper are identical, that the question came up in one or the other of these aspects. I have found no case against the drawer of a check, where the strict rule of pre *431 sentment has been required, which does not contain the ingredient of insolvency of the drawee occurring between the date and demand, and the question thus involved as to who should sustain the loss. Such is the case of Boddington v. Schlencker, (1 Nev. & Mann. 540, 4 Barn. & Adolph. 752, S. C.,) which was cited on the argument, and many others that might be mentioned. Nor have I been able to find any case exempting the drawer of a check from liability for want of strict diligence on the part of the holder, where the condition of the drawee had not in the meantime changed. Why should he be discharged? He is not prejudiced His funds still lie in the bank subject to his own order, if they were there when the check was drawn; besides, the bank itself is liable to him in an action on the case for refusing payment. (Marzetti v. Williams, 1 Barn, & Adolph. 415.) The rule I am contending for, is entirely consistent with the most ample and perfect protection of the rights of the drawer, and extends but bare justice to the holder. Even if the question were one of first impression in this court, I rather think the weight of the argument, upon principles of right and justice between the parties, would incline to the side of Murray v. Judah ; and I perceive nothing against it on the score of general policy.
Returning now to the particular case before us, and conceding the full benefit of the above distinction in favor of the holders of checks, it is most obvious that the plaintiffs have not brought themselves within it. If the paper had been presented at any time short of a few days before the demand was actually made upon the bank at Vicksburg, it would have been paid in the current funds of the place. The large check was made payable expressly in these; and even if specie had been required upon the other, and notice of the refusal to pay accordingly given, the defendants could have taken it up and saved themselves by receiving these current funds, which were at all times paid by the drawees upon drafts or checks drawn by the Phenix Bank, down to the time of the final and total suspension of *432 the bank at Vicksburgh, on the 21st of March, 1830. The judgment of the court below should, in my opinion, be affirmed.
Bronson, J. concurred in the above opinion.
Cowen, J.
This is a foreign bill of exchange, to which the same doctrine applies with respect to diligence in making demand, as on an inland bill or check. I thought, in Harker v. Anderson, that a check should be demanded within a reasonable time, as well to charge the drawer as endorser; and there is no adjudication to the contrary. The argument that the drawer sustains no damage by the delay applies to all bills of exchange, whether payable on demand or on time, and whether foreign or inland.
I therefore concur in the result of the chief justice’s opinion, on the grounds both of mere delay to demand and of positive loss : still thinking that a bill of exchange payable on demand calls for a demand within a reasonable time, in order to charge either the drawer or endorser.
Judgment affirmed.